## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.M., by and through his parents, | : | |
| Michael C. and Danielle C., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| | : | No. 21-4266 |
| v. | : | |
| | : | |
| CHICHESTER SCHOOL | : | |
| DISTRICT, | : | |
| Defendant. | : | |

### MEMORANDUM

S.M. is a fourteen-year-old boy with severe autism and additional intellectual disabilities who resides in Chichester School District ("Chichester"). S.M. and his parents bring suit against the school district, alleging that Chichester failed to provide S.M. with a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504"). S.M. also brings claims of discrimination under the IDEA, Section 504, and 42 U.S.C. § 1983.

On December 1, 2020, S.M.'s parents filed an administrative due process complaint against Chichester, alleging that the individualized education program ("IEP") provided by Chichester was inadequate because it did not include a residential placement. After a hearing, Special Education Due Process Hearing Officer Brian Jason Ford ("the hearing officer") held that Chichester had no duty to issue S.M. any IEP because the medical placement where he currently resides is outside of the district. S.M. appeals the hearing officer's decision and seeks a temporary restraining order or preliminary injunction mandating Chichester to provide him with a residential IEP. The parties argued their motion on March 17, 2022, at a hearing the Court designated as a

1

hearing for a preliminary injunction. ECF No. 19. I exercise jurisdiction to review the hearing officer's decision under 20 U.S.C. § 1415(i)(2). Because S.M. is entitled to an IEP with a residential placement, I will grant S.M.'s motion for a preliminary injunction.

## I.    Background

S.M. is a fourteen-year-old boy whose autism and intellectual disabilities make it impossible for him to learn in a traditional educational setting. Decl. of Danielle Ciavarelli, at ¶ 3-5. He requires assistance to dress himself, shower, use the bathroom, and keep himself safe. *Id.* at ¶ 4; Dep. Of Kristen Lefevre, at p. 49. S.M.'s parents cannot provide for his educational or safety needs by themselves, and when living at home, he has been hospitalized multiple times because of concerns for his safety and the safety of his family. Dep. of Danielle Ciavarelli, at p. 655-58. In the past he has made progress only when provided education in a residential facility where he has both lived and learned. *Id.* at 659-61.

In August of 2020, S.M's parents moved to Chichester School District and requested that Chichester provide S.M. with an IEP that included a residential educational placement. Decl. of Danielle Ciavarelli, at ¶ 8-9. Instead, Chichester issued an IEP that provided S.M. only with a day program. *Id.* at ¶ 10; Dep. of Danielle Ciavarelli, at p. 681. Because Chichester only provided S.M. with a day program, he was home for thirteen days when he experienced a crisis and attempted to physically harm his mother and dogs. Decl. of Danielle Ciavarelli, at ¶ 13; Dep. of Danielle Ciavarelli, at p. 675. Because he was in crisis, S.M. was hospitalized at Foundations, a psychiatric hospital intended for short-term treatment. Decl. of Danielle Ciavarelli, at ¶ 13, 16. Although Foundations was located outside of the school district, Chichester signed an agreement retaining all responsibility for providing S.M. with a FAPE under the law. *See* App. #1 to Pl.'s TRO Mot., ECF No. 10-5. S.M.'s parents repeatedly requested that Chichester provide S.M. with a residential

IEP, but Chichester continued to refer him only to day programs. Admin. Record, ECF No. 9-15, at p. 8-14; Decl. of Danielle Ciavarelli, at ¶ 19. Because S.M. had no other place to go, S.M. remained at the psychiatric hospital for almost a full year. Decl. of Danielle Ciavarelli, at ¶ 23.

In September of 2021, S.M. was moved to a medical residential treatment facility (RTF) funded by the state for 30 days. *Id.* at ¶ 25. Since then, S.M. has remained at the RTF, and the state has extended his funding for short term periods of up to 90 days at a time. *Id.* at ¶ 28, 32, 34, 35. Currently, the funding is set to expire on April 11, 2022. *Id.* at ¶ 35. S.M.'s RTF program is not coordinated with his educational day program, and therefore he lacks consistent support and programming to help him progress in his treatment and his education. *Id.* at ¶ 29-30. Although S.M.'s parents could remove him from the RTF at any time, they have not done so because without an alternative residential placement, "this would only throw him back into a crisis situation." *Id.* at ¶ 31.

As a result of Chichester's failure to provide a residential IEP, S.M.'s parents brought an administrative due process claim to request an IEP that included a residential placement. After a hearing, the hearing officer found that Chichester did not have an obligation to provide S.M. with an IEP. Alternatively, the hearing officer found that if Chichester did owe S.M. an IEP at the time of the hearing, then that IEP must include a residential educational facility. *Id.* at 35.

## II.    Standard of Review

In determining whether to grant preliminary relief, such as a temporary restraining order or a preliminary injunction, a court must decide whether the party seeking the injunction has shown: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d

102, 109 (3d Cir. 2010).

### III.   Discussion

   a.   <u>S.M.'s appeal from the hearing officer's decision is likely to succeed on the merits.</u>

In an appeal from an administrative decision under the IDEA, the burden of persuasion is on the party challenging the hearing officer's decision: in this case, S.M. has the burden of persuasion. 20 U.S.C. § 1415(i)(2)(A). When reviewing a state administrative decision under the IDEA, the district court receives the records of the administrative proceedings, hears additional evidence if any party requests it, and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c). A federal district court must give "due weight" to all factual findings of the administrative law judge in IDEA cases. *S.H. by State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269 (3d Cir. 2003). Due weight requires that the court take factual findings as prima facie correct and explain any departure from them. *Id.* at 270. The legal decisions of an administrative hearing officer, however, are subject to plenary review. *Downingtown Area Sch. Dist. v. D.S.*, 2022 WL 523563, at *7 (E.D. Pa. Feb. 22, 2022) (citing *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995)).

The hearing officer in this case found first that Chichester had no responsibility to issue a contingent IEP because Chichester was only the "resident district," not the "host district." When a student is schooled outside of the district where he or she resides, traditionally the "resident district" provides for funding only, and the "host district" takes responsibility for providing a FAPE. 24 P.S. § 13-1306. When a student has separate host and resident districts, they are known as "1306 students," because their rights are governed by 24 P.S. § 13-1306.  The hearing officer assumed that Chichester was the "resident district," not the "host district," and therefore found that "Chichester has no current obligation to provide" a FAPE for S.M. H.O. Decision at p. 3.

However, a "resident district" can still take on responsibility for placement in addition to funding. Chichester signed a document called a "Local Agency Responsibility Agreement," stating that it "formally assumed all responsibility" for S.M.'s education for the duration of his placement at the facility outside their district. Chichester concedes that they "served as both host and district of residence" because of the signed agreement. Def. Resp. to Mot. at p. 11. The hearing officer did not mention this document. H.O. Decision. The hearing officer's entire opinion, therefore, is based on an error, because it assumes Chichester's only obligations are those of a resident district. Because Chichester served as host and resident district, the hearing officer was incorrect that they have no obligation to provide a FAPE.

The hearing officer also found that when a student has a separate host and resident district, the resident district is only obligated to provide a contingent IEP when the student's discharge from the facility in the host district is imminent. H.O. Decision at p. 28. Chichester relies heavily on this finding in their pending motion to dismiss and response to the motion for a temporary restraining order or preliminary injunction, arguing that S.M.'s appeal is not ripe because his discharge from his current RTF is not imminent. *See* Def.  Resp. to Mot. at p. 12; Def. Mot. to Dismiss at p. 7. The caselaw relied on by the hearing officer and Chichester is inapplicable because it addresses students with separate resident and host districts. Additionally, the imminence requirement does not appear in the statutory framework or caselaw cited, and instead is based on an interpretation by the hearing officer. Imminency is not a requirement found in 24 P.S. § 13-1306, the IDEA, or Third Circuit precedent

Anticipating an appeal on the issue of Chichester's obligation to provide a FAPE, the hearing officer also evaluated whether S.M. required a residential placement at the time of his decision. H.O. Decision at p. 36. He did so to avoid the necessity of a remand. *Id.* The hearing

officer found that the record "more than preponderantly establishes that the student cannot *currently* derive a benefit from education without the intensive behavioral support provided by a residential placement. All arguments to the contrary ignore the entirety of the Student's educational history." H.O. Decision at p. 35.

Based on my independent review of the record, and affording due weight to the hearing officer's findings of fact, there is no reason to disturb his conclusion as to S.M.'s need for residential placement. The officer took sufficient testimony and reviewed all of the evidence presented by the parents and Chichester, including testimony from S.M.'s mother, his former teacher at Elwyn, his therapist at Foundations Behavioral Health, and his primary clinician at Melmark. Chichester had the opportunity to cross examine all witnesses and present any evidence to the contrary. The hearing officer found that if Chichester did owe S.M. a FAPE, it must include a residential placement, and the record supports this finding. S.M. is therefore likely to prevail on the merits of Count I of his complaint because Chichester has an obligation to provide a residential FAPE and has not done so.[1]

> b.  <u>S.M. will suffer irreparable harm if the injunction is denied.</u>

A plaintiff seeking a preliminary injunction must prove that he is *likely* to suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Numerous courts have found that denial of a FAPE automatically constitutes irreparable injury. *See, e.g.*, *Olivia B. v. Sankofa Acad. Charter Sch.*, 2015 WL 379282, at *9 (E.D. Pa. Aug. 1, 2014) (noting that the "failure to provide a FAPE constitutes irreparable injury"); *Blackman v. D.C.*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003) ("[E]ach day a child is denied a free appropriate

---

[1] Because I find that S.M. is likely to prevail on the merits of Count I, I do not address the merits of his other claims at this juncture.

education . . . he or she is harmed yet again."); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 78 F. Supp. 2d 138, 143 (W.D.N.Y. 1999) ("The denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes."). Additionally, a child who suffers from disabilities like S.M. suffers even greater harm when they are not provided a FAPE. *See Massey v. D.C.*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005) (noting that failure to provide a FAPE causes a child without disabilities harm, and "such harm is heightened for a disabled child with much greater need for daily structure and consistency").

S.M.'s mother notes that a few weeks without residential placement erased all of the progress he made in a year and a half of his prior residential program. Decl. of Danielle Ciavarelli, at p. 5. Additionally, S.M. is not currently progressing at his RTF with regard to his behavioral, communication, and functional needs. Pl.'s TRO Mot. 17-18. He requires one on one staffing for his behavior, and exhibits all of the same behavior he did upon his admission. Decl. of Danielle Ciavarelli, at p. 6-7. While S.M.'s parents know that he is regressing and unable to progress at his RTF, the only alternative currently is to bring him home where his mother believes he would likely experience another crisis and be re-hospitalized. *Id.* His current placement is also temporary, requiring S.M.'s care to be in a constant state of limbo. S.M. is living "continually under threat of losing the residential services he needs to keep him safe, and entirely without the coordinated educational services he needs to gain needed skills to live more independently." *Id.* at 8. S.M. has therefore met his burden to show that he is likely to suffer irreparable injury without the FAPE that Chichester owes him.

      c.   <u>Granting a preliminary injunction will not result in even greater harm to Chichester.</u>

After determining that the movant is likely to succeed on the merits and to suffer irreparable injury, the court must balance the parties' relative harms and determine whether the non-movant's

harm is greater than that to the movant. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017). Chichester argues that providing S.M. with a residential placement would harm Chichester's ability to provide FAPE to other students because of the potential cost of the programs.[2] *Id.* at 22. Chichester argues also that a decision in line with the hearing officer's findings as to S.M.'s need for a residential placement "could easily be the death knell of public education." *Id.* This potential harm is speculative and insufficient in and of itself to overturn findings made within the hearing officer's authority. *See Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 597 (W.D. Pa. 2009) ("Defendant's argument that this order will open the floodgates and result in a large number of students that it will have to accommodate is speculation."). Chichester is correct that "cost is not determinative," and the cost to the school district does not outweigh the harm S.M. suffers when he is deprived of his legal right as a person with disabilities to a free and appropriate public education.

    d.  <u>The public interest favors granting S.M.'s motion for preliminary injunctive relief.</u>

Finally, granting a preliminary injunction requires a finding that the public interest favors doing so. This inquiry is "fairly routine," because when a plaintiff has proven both success on the merits and irreparable harm, the public interest will "almost always" favor a preliminary

---

[2] Chichester also argues that providing S.M. with the FAPE that he is legally entitled to could be exposing themselves to liability for "state-created danger" because they would be "essentially remov[ing]" S.M. from his RTF. *Id.* at 21. S.M. is not incarcerated—he is in a medical placement that is entirely voluntary and from which his parents can choose to remove him at any point. Decl. of Danielle Ciavarelli, at p. 7. Additionally, Chichester has offered S.M. an IEP for DCIU day programs, which S.M. would theoretically enter if and when his mother removes him from the RTF. It is difficult to understand how offering S.M. a residential placement could be a state-created danger while offering only a day program could not, given that the crux of this complaint is the extent to which S.M.'s safety and the safety of those around him are in jeopardy when he is required to live at home.

injunction. *Issa*, 847 F.3d at 143 (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004) and *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). But when a student is deprived of their legal right to an education under federal law, the public interest favors injunctive relief to enforce their rights. *See Issa*, 847 F.3d 121, 143 (upholding the lower court's finding that"[i]t is undeniably in the public interest for providers of public education to comply with the requirements of the EEOA"); *Trefelner,* 655 F. Supp. 2d at 598 ("There is a strong public interest in protecting fundamental First Amendment rights"). Similarly, the public interest favors enforcing school district compliance with the IDEA.

Chichester argues that finding for S.M. would create "an immediate right for every single student currently placed by a third-party into an RTF . . . to be immediately removed from that medical placement and placed by their school district of residence into a different residential school placement at taxpayer expense." Def. Resp. to Mot. at 23. This holding is not nearly so broad. Our procedural safeguards still require every student who wishes to challenge their IEP, contingent or otherwise, to bring and exhaust an administrative claim. 20 U.S.C. § 1415(f). At the administrative level, all students are entitled to present evidence that their district has not provided a FAPE—but the district is entitled as well to contest that evidence to show otherwise. This case is no different.

S.M. has satisfied the requirements for preliminary injunctive relief by showing a likelihood of success on the merits of Count I, that he will suffer irreparable harm if relief is not granted, that the school district's harm does not outweigh his own, and that the public interest is favored by granting his requested relief. Therefore, S.M.'s motion for a preliminary injunction will be granted.

s/ANITA B. BRODY, J.
ANITA B. BRODY, J.
March 24, 2022

9