IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.M., BY AND THROUGH HIS PARENTS, | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 21-4266 |
| | : | |
| CHICHESTER SCHOOL DISTRICT, | : | |
| Defendant. | : | |

**MEMORANDUM**

Before the Court are Plaintiffs' Motion for Judgment on the Administrative Record on Count I and the parties' proposed final orders. For the reasons that follow, the Court will grant Plaintiffs' Motion and likewise order "appropriate" equitable relief under 20 U.S.C. § 1415(i)(2)(C)(iii).

## I.    BACKGROUND

As Special Education Hearing Officer Brian Ford observed in his August 27, 2021 due process decision, *see infra* subsection E, "there is simply no dispute about what happened. Rather, the parties reach different conclusions about what the facts mean." Hearing Officer Decision 5, ECF No. 9-3 ("H.O. Decision"). Accordingly, unless otherwise noted, the facts set forth in subsections A, B, C, and D are taken from the Hearing Officer's findings of fact.[1] Subsections E and F set forth an overview of the Hearing Officer's decision and subsequent proceedings at the District Court and appellate levels.

### A.    S.M.'s Disabilities and Special Educational Needs

S.M. is a now 18-year-old boy[2] who has severe autism, attention deficit hyperactivity

---

[1] His findings have been supplemented with cites to undisputed evidence (testimonial and nontestimonial) from the administrative record.

[2] S.M. was 13 when his parents first initiated due process proceedings in December 2020.

disorder, speech and language delays, and an intellectual disability.  H.O. Decision 6.  He "lacks

safety skills, requires assistance for all activities of daily living, is not fully toilet trained despite

multiple efforts, [] attempts to ingest non-food items, needs a high and consistent level of direct

prompting, does not understand boundaries, destroys property, and"—"through a combination of

frustration and an inability to communicate"—"has hurt or tried to hurt adults, other children, and

animals." *Id.*  His "behavioral health needs are a function of" his disabilities; indeed, his "medical,

social, behavioral, and educational needs are inextricably intertwined." *Id.* at 5-6.  Because of his

disabilities, S.M. has "always qualified for and received special education" under the Individuals

with Disabilities Education Act (IDEA). *Id.*

**B.      S.M.'s Educational and Medical Placements: Pre-2017 to September 2020**

Before 2017, S.M. and his parents lived within the School District of Philadelphia. *See id.*

at 7; *see also* Danielle Civarelli Dep. Tr. 650:3-7, ECF No. 9-7 (S.M.'s mother's deposition

testimony regarding S.M.'s educational history).  The School District placed S.M. at a non-

residential private school for children with disabilities.  H.O. Decision 7.  S.M. did not make

progress in that placement. *See id*. (citing "[u]ndisputed testimony"); *see also* Civarelli Dep. Tr.

650:3-652:10 (testimony regarding S.M.'s progress, or lack thereof, at Philadelphia placement).

In 2017, S.M. and his parents moved into the Interboro School District. *See* H.O. Decision

7; Civarelli Dep. Tr. 652.  For the 2017-2018 school year, Interboro placed S.M. at the Elwyn

Davidson School, another non-residential private school for children with disabilities. *See id*.

"Documentary evidence and undisputed testimony establishes that [S.M.] saw (at best) only a

small amount of inconsistent progress" at Elwyn Davidson. *See id.*

At the beginning of the 2018-2019 school year, S.M.—after exhibiting aggression toward

his mother and pets—was admitted to a residential psychiatric crisis hospital on three separate

occasions. *See id.* 7-8.  During his third admission in October 2018, the hospital recommended

that S.M. be placed in a residential treatment facility (RTF)[3] "as a medical necessity[.]"  *Id.*  at 8.

S.M. was admitted to Melmark's RTF[4] in January 2019 and lived there full time while continuing

to attend school at Elwyn Davidson.  *Id*. at 8-9.  In March 2020, Elwyn Davidson "discontinued

in-person instruction" because of the pandemic.  *Id.* at 9.  Despite the RTF staff's best efforts, S.M.

was largely unable "to participate in or benefit from" Elwyn Davidson's remote instruction.  *Id.*

**C.**    **S.M.'s Educational and Medical Placements: September 2020 to August 2021**

In September 2020, S.M.'s parents moved into Chichester School District.  *Id.* at 10.  At

that time, S.M. was (1) approved to return home from Melmark's RTF; and (2) still "receiving

ineffective remote instruction" from Elwyn Davidson.  *See id.* at 9, 10.  Accordingly, S.M.'s

parents asked Chichester to add a residential educational placement to his individualized education

program (IEP).  *See* Chrissy Melville Dep. Tr. 528-29, ECF No. 9-8 (deposition of Chrissy

Melville, supervisor for special education in Chichester) (colloquy between Hearing Officer and

counsel establishing there was "no dispute" that parents requested a residential educational

placement); ECF No. 9-15 at 8-12 (September and October 2020 emails from S.M.'s counsel

conveying requests for residential programming).

On October 7, 2020, Chichester convened an IEP meeting to discuss S.M.'s upcoming

discharge from Melmark's RTF, his "current programing, [his] need for in-person instruction, and

[a] potential change in placement to accommodate [his] in-person instruction while [Elwyn

---

[3] The terms "RTF" and "residential educational placement," both of which are used frequently throughout the course of this memorandum, are not interchangeable. *See* H.O. Decision 19.  An RTF is a medical placement "prescribed by non-educational personnel for non-educational purposes" and is funded either by a child's parents or, as was true in S.M.'s case, social services agencies.  *Id.*  By contrast, a residential educational placement is one of the "continuum of alternative placements" a school district must offer qualifying students under the IDEA.  34 C.F.R. § 300.115.

[4] Melmark offers both an RTF and a residential educational program.  S.M. lived at Melmark's RTF from January 2019 to October 2020 and—as explained below, *see supra* subsection F—is currently enrolled in Melmark's residential educational program. *See S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. CV 21-4266, 2024 WL 4438472, at \*6 n.11 (E.D. Pa. Oct. 7, 2024) (outlining S.M.'s history at Melmark), *aff'd*, No. 24-2727, 2025 WL 649894 (3d Cir. Feb. 28, 2025).

Davidson] remain[ed] virtual." ECF No. 9-14 at 167 (summary of October 7 meeting included in S.M.'s IEP). Chichester recommended that S.M. be placed at a non-residential autistic support program at the Delaware County Intermediate Unit (DCIU) and also agreed to refer S.M. to other day program placements. *See* Melville Dep. Tr. 529:20-530:13, 539:21-540:10 (testimony regarding October 6 IEP meeting). Chichester did not, however, agree to refer S.M. to any residential educational placements. *See id.* at 543:8-11.

On October 15, 2020, Melmark's RTF discharged S.M. with a "step-down" in-home support plan staffed by Behavioral Health and Rehabilitative Services (BHRS) and funded by Magellan. H.O. Decision 10. Unfortunately, BHRS "failed to staff [S.M.'s] step-down program as planned[,]" leaving S.M.'s parents "without the professional services and supports that everyone involved deemed necessary for a successful transition." *Id.* at 10-11. BHRS's failure also "required" S.M.'s parents "to take on the additional obligation of enabling and facilitating [S.M.'s] remote learning from the private day school—a feat that [even] the RTF staff were not able to accomplish." *Id.* at 11.

On October 27, 2020, Chichester convened a second IEP meeting. *Id*. At that meeting, Chichester rejected S.M.'s parents' request for a residential educational placement because, in its opinion, S.M.'s educational and medical needs were not inextricably intertwined. *See* Melville Tr. 535:11-536:21 (testimony regarding October 27 IEP meeting). In lieu of a residential educational placement, Chichester again offered to place S.M. in the DCIU's non-residential autistic support program. H.O. Decision 11. There was one caveat: S.M. "would need a full-time Personal Care Assistant [] in order to participate" and Chichester had not yet been able to staff that position. *Id*.

One day later, S.M was admitted to a crisis hospital located within Central Bucks County School District after he attempted to harm his mother and a pet. *Id.* at 29. As a result, Central

Bucks became S.M.'s "host district" and assumed responsibility for S.M.'s free appropriate public

education (FAPE), while Chichester, as S.M.'s "resident district," only retained responsibility for

funding it.    *See* H.O. Decision 21; *see also* 24 P.S. § 13-1306(c) (outlining respective

responsibilities of host and resident school districts under Pennsylvania law).  In November 2020,

the Bucks County Intermediate Unit (BCIU) thus began giving S.M. two 45-minute blocks of

education a day.  *See* ECF No. 9-13 at 692 (noting revision to S.M.'s then-operative IEP); Janae

West Dep. Tr. 193-94, ECF No. 9-10 (deposition testimony of Janae West, therapist at crisis

hospital, regarding BCIU).  For the majority of each of those blocks, S.M. was not able to attend

to instruction.  H.O. Decision 12; *see also* West Dep. Tr. 303:9-10 (reviewing S.M.'s data and

confirming that S.M.'s "non-compliance" was "substantially impacting his day," meaning S.M.

was "not attending to the instruction" for 56 percent of each block).  "Even more concerning,"

there was "little coordination" with regards to "behavior programs implemented by the crisis

hospital and the [BCIU]."  H.O. Decision 12; *see also* West Dep. Tr. 320-321 (testifying to same).

In December 2020, the crisis hospital recommended S.M. be discharged and placed in an

RTF.  H.O. Decision 12.  In March 2021, after S.M.'s parents successfully appealed Magellan's

denial of funding, S.M. was accepted to Elwyn's RTF.[5]  H.O. Decision 12.  His admission was

delayed due to staffing shortages, leaving his parents no choice but to keep him at the crisis

hospital.  *See id*.

**D.**    **The Due Process Proceedings and Chichester's Issuance of S.M.'s New IEP: December 2020-August 2021**

On December 1, 2020, S.M.'s parents filed an administrative due process complaint against

Chichester.  Due Process Compl., ECF No. 9-19.  They alleged that Chichester had denied S.M. a

---

[5] Elwyn's RTF is different from but "connected to" the Elwyn Davidson School (the private day school S.M. attended from 2017 up until his hospitalization in October 2020).  H.O. Decision 33.

FAPE by failing to offer him a residential educational placement before he was hospitalized, and asked for an order requiring Chichester to (1) facilitate and fund such a placement as soon as practicable, or (2) fund an independent evaluation of S.M. for purposes of determining whether he needs a such a placement to receive a FAPE. *See id.* at 1 ("This is a claim for prospective residential school placement . . ."), 5 (outlining requested relief); *see also* Parents' Closing Argument 27, ECF No. 9-5 (asking "Hearing Officer . . . to order CSD to fund a residential educational placement for S.M.").

On December 7, 2020—while the due process complaint was pending—Chichester issued a Notice for Reevaluation for purposes of reevaluating S.M.'s educational needs. *See* ECF No. 9-15 at 18. Separately, on December 16, 2020, Central Bucks and Chichester entered into a "Local Educational Agency Responsibility Agreement." *See* December 2020 Agreement, ECF No. 10-5;[6] *see also* 24 P.S. § 13-1306(d) (a student's "school district of residence and the school district in which [an] institution is located may agree to an [alternative] arrangement of educational and procedural responsibilities[.]"). Per the terms of their agreement, Chichester again "assumed all responsibility" for S.M.'s education, "including all responsibility for the provision of a free appropriate education under state and federal law[.]" *Id*.

On April 6, 2021, Chichester issued a notice of recommended placement ("NOREP")[7] that would go into effect once S.M. was discharged from the crisis hospital and a contingent IEP that would go into effect once S.M. was discharged from Elwyn's RTF. *See* ECF No. 9-15 at 48-51

---

[6] The Hearing Officer did not address the December 2020 Agreement, but the Court must nonetheless consider it as part of the "expanded record." *Oberti by Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993).

[7] The IDEA requires that parents of a student with disabilities receive prior written notice before a school "proposes to initiate or change" the student's educational placement. 20 U.S.C. § 1415(b)(3)(A). In Pennsylvania, the form used to provide this notice is called a NOREP. *T.R. v. Sch. Dist. of Philadelphia*, 223 F. Supp. 3d 321, 325 (E.D. Pa. 2016). A NOREP "is properly considered part of a [student's] overall educational plan." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 275 (3d Cir. 2012).

(NOREP), 52-95 (contingent IEP).    In both the NOREP and contingent IEP, Chichester (1)

proposed that S.M. be placed at the DCIU non-residential program; and (2) rejected his parent's

request for a residential educational placement because "[i]nformation gleaned from team

meetings, which included his educational and residential providers, showed that [S.M.] does not

require educational services on a 24 hour basis" and "his medical and educational needs are not

inextricably intertwined."  *Id.* at 49 (NOREP); *see also id.* at 92-94 (portion of contingent IEP

discussing educational placement at DCIU). S.M.'s mother timely rejected both the NOREP and

contingent IEP.  ECF No. 9-15 at 96-99.

### E.    The Hearing Officer's August 27, 2021 Decision

On August 27, 2021—after five days of evidentiary hearings and reviewing a "very large"

record—the Hearing Officer dismissed the due process complaint in its entirety on one "sole

basis."  H.O. Decision 4, 37-38.  He reasoned that because Chichester was S.M.'s "resident

district" and not his "host district" under 24 P.S. § 13-1306, Chichester had no current duty to

provide S.M. with a FAPE, and likewise had no duty to provide S.M. with an IEP until S.M.'s

return to Chichester was imminent.  *See* H.O. Decision 3, 21, 34 n.14.  However, to avoid trapping

S.M. in limbo in the event of a successful appeal, the Hearing Officer also opted to evaluate the

"appropriateness" of the April 6, 2021 IEP.  *See* H.O. Decision. 30-31 ("If parents appeal this

decision and prevail, [S.M.] will be . . . entitled to a contingent IEP but without a determination as

to whether the contingent IEP is appropriate.  Therefore, in an abundance of caution, and at risk of

issuing an advisory opinion, I will consider whether [S.M.'s] contingent IEP is appropriate.").  In

so doing, he found that if Chichester did owe S.M. an IEP based on his then-current needs, then

that IEP must include a residential educational placement.  *See id*. at 34-35.

### F.    District Court Proceedings: September 2021 to Present

In September 2021, S.M.'s parents (Plaintiffs) timely appealed the Hearing Officer's

decision, giving rise to the instant case. *See* Compl., ECF No. 1.[8]  Around the same time, S.M.

moved to Elwyn's RTF and began attending school at the DCIU.[9]

In February 2022, Plaintiffs moved for a preliminary injunction requiring Chichester to

secure and fund a residential educational placement for S.M.  *See* Mot., ECF No. 10; Resp., ECF

No. 18.  In March 2022, the Court granted their motion, and ordered Chichester:

> to make all necessary referrals for residential educational placement for purposes of S.M.'s
> [free appropriate public education], in full consultation with parents; make all necessary
> arrangements to secure such placement and authorize the necessary funding; and plan for
> and execute a reasonable and appropriate plan for transitioning S.M. from the [residential
> treatment facility] where he currently resides, to the residential educational placement the
> parties mutually select, as soon as practicably possible.

Order, ECF No. 22; *see also S.M. by & through Michael C. v. Chichester Sch. Dist.,* No. CV 21-

4266, 2022 WL 875232, at (E.D. Pa. Mar. 24, 2022) (accompanying memorandum), *clarified on*

*denial of reconsideration*, No. CV 21-4266, 2022 WL 2134165 (E.D. Pa. June 14, 2022).  In the

two-plus years that followed, Chichester unsuccessfully appealed that order, the parties failed to

find a mutually agreeable placement, and S.M. did not receive the residential educational

programming he needed.  *See S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. 22-1612,

2024 WL 4262788 (3d Cir. Sept. 23, 2024) (affirming March 2022 order entering preliminary

injunction); *see also S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. CV 21-4266,

2024 WL 4438472, at *2-4 (E.D. Pa. Oct. 7, 2024) (describing procedural history and parties'

efforts to find a residential educational placement for S.M. from June 2022 to August 2024), *aff'd*,

---

[8] In addition to appealing the Hearing Officer's decision (Count I of the Complaint), Plaintiffs also brought claims
under the IDEA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983 (Counts II through V) and sought
injunctive relief (Count VI).  As noted *infra*, Plaintiffs have since agreed to dismiss Counts II-VI.
[9] As Elwyn's RTF is located within Rose Tree Media School District, Rose Tree Media would have ordinarily served
as S.M.'s "host district" and would have been responsible for his FAPE while he lived there.  However—just as it did
with Central Bucks—Chichester entered into a "Local Educational Agency Responsibility Agreement" with Rose
Tree Media in September 2021, thereby assuming responsibility for funding and furnishing S.M.'s FAPE.  *See*
September 2021 Agreement, ECF No. 10-5 (transferring host district responsibilities from Rose Tree Media to
Chichester).

No. 24-2727, 2025 WL 649894 (3d Cir. Feb. 28, 2025) (describing procedural history as "contentious"). Finally, in September 2024—after appointing an independent expert to provide an updated evaluation of S.M. and holding hearings on two proposed placements—the Court ordered Chichester to secure and fund S.M.'s residential educational placement at the Melmark School. *See* Order, ECF No. 154; *see also S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. CV 21-4266, 2024 WL 4438472 (E.D. Pa. Oct. 7, 2024) (accompanying memorandum). In February 2025, following Chichester's second appeal in this case, the Court of Appeals affirmed that order. *S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. 24-2727, 2025 WL 649894 (3d Cir. Feb. 28, 2025).

In March 2025, Plaintiffs moved for judgment on the administrative record on Count I of their Complaint, which Chichester timely opposed. *See* Mot., ECF No. 174; Resp., ECF No. 174. In May 2025, after a status conference at which Plaintiffs agreed to dismiss their five additional claims against Chichester, the parties submitted proposed final orders addressing what relief, if any, S.M. is owed. *See* Def.'s Proposed Final Order, ECF No. 183; Pls.' Proposed Final Order & Br., ECF No. 184. The Court will address the motion for judgment on the administrative record and the parties' proposed final orders in turn below.

## II.    MOTION FOR JUDGMENT ON COUNT I

### A.    Legal Standard

When a party appeals an administrative due process decision, the IDEA requires a district court to (1) "receive the records of the administrative proceedings"; (2) "hear additional evidence" when requested; and (3) "basing its decision on the preponderance of the evidence, [] grant such relief as the court determines is appropriate." 20 U.S.C. §§ 1415(i)(2)(C)(i)-(iii). In reviewing a due process decision, a district court applies "'modified de novo' review." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). In a case where a district court hears additional evidence,

the court must give "due weight" to a hearing officer's factual findings, but "is free to accept or

reject [them] depending on whether those findings are supported by the new, expanded record and

whether they are consistent with the requirements of the IDEA." *Oberti*, 995 F.2d at 1220.  A

hearing officer's legal determinations are subject to plenary review.  *L.T. v. North Penn Sch. Dist.*,

342 F. Supp. 3d 610, 615 (E.D. Pa. 2018); *Carlisle Area Sch. v. Scott P. By & Through Bess P.*,

62 F.3d 520, 528 n.3 (3d Cir. 1995).

>    **B.**    **Discussion**

>    **1.**    **The hearing officer erred in holding Chichester was not obliged to provide S.M. with a FAPE.**

The Hearing Officer began by determining that Chichester, as S.M.'s "resident" district

under 24 P.S. § 13-1306(c), was not responsible for S.M.'s FAPE.  *See* H.O. Decision 3

("Chichester has no current obligation to provide a [FAPE] for S.M.  Rather, the host district has

that obligation.").  As this Court has already explained, that was error.  *See S.M. by & through

Michael C. v. Chichester Sch. Dist.,* No. CV 21-4266, 2022 WL 875232, at *2-3 (E.D. Pa. Mar.

24, 2022), *clarified on denial of reconsideration*, 2022 WL 2134165 (E.D. Pa. June 14, 2022), *and

aff'd*, No. 22-1612, 2024 WL 4262788 (3d Cir. Sept. 23, 2024).

It is true that, ordinarily, Central Bucks (as S.M.'s "host district") would have been

responsible for providing S.M.'s FAPE while he was hospitalized, while Chichester (as S.M.'s

"resident district") would have only been responsible for funding it.  *See* 24 P.S. §§ 13-1306(c),

13-1309(2).  However, Chichester and Central Bucks agreed to modify the status quo by entering

into a "Local Educational Agency Responsibility Agreement" on December 16, 2020—a

document that the Hearing Officer did not mention in his decision.  *See* Local Educational Agency

Responsibility Agreement, ECF No. 10-5; *see also* 24 P.S. § 13-1306(d) (a student's "school

district of residence and the school district in which [an] institution is located may agree to an

[alternative] arrangement of educational and procedural responsibilities[.]").  Per the terms of their agreement, Chichester "assumed all responsibility" for S.M.'s education, "including all responsibility for the provision of a free appropriate education under state and federal law," from that day forward.  *Id.*

The Agreement between Chichester and Central Bucks speaks for itself: as of December 16, 2020, Chichester was no longer acting solely as S.M.'s "resident district" and was obliged to fund *and* furnish S.M.'s FAPE.  The Court therefore reverses the Hearing Officer's decision to the extent it concluded that Chichester did not owe S.M. a FAPE.

### 2. The hearing officer erred in concluding that Chichester did not owe S.M. an IEP.

The Hearing Officer reasoned that because Chichester was S.M.'s "resident district" and not his "host district" under 20 P.S. § 13-1306(c), it had no duty to give S.M. an IEP unless his "return to Chichester was imminent."  H.O. Decision 29; *see also id.* at 34 n.14 ("Chichester has no obligation to issue a current IEP for [S.M.]  If Chichester owes the student any IEP at all, it is a contingent IEP.").  That too was error.  As explained above, Chichester had stepped beyond the realm of responsibility ordinarily accorded to a "resident district" and into that of a "host district"—namely, "the provision of a [FAPE]" to S.M.  *See* December 2020 Agreement.  In assuming responsibility for S.M.'s FAPE, Chichester likewise became obliged to give S.M. an IEP "reasonably calculated to enable [him] to make progress appropriate in light of [his] circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017); *see also D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012) ("The IEP is the means of ensuring that each special needs child receives FAPE[.]")*.*  That

obligation was current, not contingent on S.M.'s return (imminent or otherwise) to Chichester.[10]

The Court therefore reverses the Hearing Officer's decision to the extent it concluded that

Chichester did not owe S.M. an IEP.

### 3. The hearing officer's finding as to S.M.'s need for a residential educational placement was correct.

To keep S.M. from "be[ing] trapped in limbo" in the event of a successful appeal, the

Hearing Officer decided to evaluate the appropriateness of the April 6, 2021 IEP—more

specifically, the appropriateness of Chichester's proposed placement at the DCIU.  H.O. Decision

30-31.  He found that if Chichester *did* owe S.M. an IEP based on his needs "at the time [the IEP

was] offered," then the IEP had to include a residential educational placement.  H.O. Decision 34.

More specifically—in a paragraph worth reprinting in full—the Hearing Officer found as follows:

> The record more than preponderantly establishes that the Student cannot
> currently derive a benefit from education without the intensive behavioral
> support provided by a residential placement. All arguments to the contrary
> ignore the entirety of the Student's educational history. So, if the standard
> requires a contingent IEP that is reasonably calculated to provide a FAPE
> based on the Student's current needs—regardless of the most likely
> circumstances triggering implementation—the Parents are entitled to what
> they demand.

H.O. Decision 35.  After independently reviewing the record but still affording due weight to the

Hearing Officer's findings of fact, the Court affirms his finding as to S.M.'s need for a residential

educational placement.  *See S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. CV 21-

4266, 2022 WL 875232, at *3 (E.D. Pa. Mar. 24, 2022) (explaining why "there is no reason to

disturb [the Hearing Officer's] conclusion"), *clarified on denial of reconsideration*, 2022 WL

2134165 (E.D. Pa. June 14, 2022), *and aff'd*, 2024 WL 4262788 (3d Cir. Sept. 23, 2024).

---

[10] Because the Court finds that Chichester assumed both "resident" and "host" district responsibilities—as those responsibilities are set forth in 20 P.S. § 13-1306(c)—as of December 16, 2020, the Court need not and declines to address whether a resident district's obligation to offer a contingent IEP is only triggered by a student's "imminent" return to the district.

In sum, the Court concludes that Chichester owed S.M. a FAPE,[11] and with it, a residential educational placement. The Court will therefore grant Plaintiffs' motion for judgment on the administrative record on Count I and enter judgment in favor of Plaintiffs.

## III.    RELIEF

Having concluded that Chichester violated S.M.'s right to a FAPE by failing to offer him a residential educational placement, the Court must now determine the appropriate remedy. Plaintiffs seek what they call a "compensatory injunction"—more specifically, an order that would require Chichester to fund S.M.'s residential educational placement at the Melmark School until March 4, 2029 (i.e., until he turns 22). Pls.' Br. 3, ECF No. 184-1; Pls.' Proposed Order ¶ 2, ECF No. 184. Chichester opposes Plaintiffs' request for what it characterizes as a "permanent injunction" but otherwise offers no alternative. Def.'s Proposed Final Order 1, ECF No. 183.

What Plaintiffs request is not a permanent injunction, but rather, "appropriate" relief for Chichester's violation of the IDEA. Section 1415 of the IDEA permits a court to "grant such relief as the court determines is appropriate." 20 U.S.C. §§ 1415(i)(2)(C)(iii). The IDEA is silent as to what types of relief are "appropriate" or how relief should be crafted. The Supreme Court has clarified that (1) relief must "be 'appropriate' in light of the purpose[s] of the [IDEA]," and (2) "equitable considerations are relevant in fashioning relief." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369, 374 (1985); *see also Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 717 (3d Cir. 2010) (equitable relief is appropriate if it "furthers" the purposes explicitly set forth at 20 U.S.C. § 1400(d)).

To that end, courts have consistently awarded "compensatory education" as a remedy to

---

[11] For clarity's sake, Chichester was responsible for S.M.'s FAPE from (1) September 2020 to October 28, 2020 (i.e., from the date he enrolled in Chichester School District to the date he was hospitalized in Central Bucks); and (2) December 16, 2020 onward. For the period between October 28, 2020 and December 16, 2020, however, that responsibility lay with Central Bucks.

"replace [] educational services [a student] should have received in the first place." *Ferren C.*, 612

F.3d at 718 (quoting *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 518 (D.C. Cir. 2008));

*see also Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1290 (11th Cir. 2008) (affirming award

placing student at a private school for roughly five years as "compensatory, not punitive."). A

student's "right to compensatory education accrues when the school [district] knows or should

know that the student is receiving an inappropriate education." *Ridgewood Bd. of Educ. v. N.E. ex*

*rel. M.E.*, 172 F.3d 238, 250 (3d Cir. 1999), *superseded by statute on other grounds as recognized*

*by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009).  If the school district fails

"to correct the situation," then the student "is entitled to compensatory education for a period equal

to the period of deprivation, but excluding the time reasonably required for the school district to

rectify the problem." *M.C. on Behalf of J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir.

1996).

Courts within the Third Circuit have interpreted this standard in varying ways.  Some have

awarded "full days [of] compensatory education for the period of deprivation," while others have

crafted "more particularized" awards "based upon the quantity of services improperly withheld

during the period of deprivation less the reasonable amount of time in which the school district

should have addressed the deficiency."  *See Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*,

39 F. Supp. 3d 584, 606-08 (M.D. Pa. 2014) (discussing and citing cases).   Ultimately, no matter

how an award is crafted, it "should aim to place [the student] in the same position they would have

occupied but for the school district's violation of IDEA."  *Ferren C.,* 612 F.3d at 718 (quoting

*Reid,* 401 F.3d at 518).

In the instant case, the Hearing Officer had no occasion to craft a compensatory remedy.

To the contrary: his erroneous conclusion that Chichester did not owe S.M. a FAPE was the

catalyst for S.M.'s protracted FAPE denial.  Even still, what he found "the record more than

preponderantly establishe[d]" in August 2021 remained true throughout the course of this case:

S.M. required a residential educational placement to receive a FAPE.  H.O. Decision 35; *S.M. by*

*& through Michael C. v. Chichester Sch. Dist.*, No. CV 21-4266, 2024 WL 4438472, at *5 (E.D.

Pa. Oct. 7, 2024) (finding that "the record . . . makes clear that S.M. still struggles with 'basic self-

help and social skills" and "requires a residential educational placement now more than ever.")

(internal citations and punctuation omitted), *aff'd*, No. 24-2727, 2025 WL 649894 (3d Cir. Feb.

28, 2025).  The Court finds that the record in its entirety—both "the records of the administrative

proceedings" and "additional evidence" that has since been presented by the parties—

preponderantly establishes the following: (1) Chichester knew at least as of August 27, 2021 that

S.M. needed a residential educational placement; (2) S.M. continued needing such a placement

throughout the course of the proceedings; and (3) S.M. only received what he needed when this

Court ordered Chichester to fund and facilitate his placement at the Melmark School on September

4, 2024.  20 U.S.C. § 1415(i)(2)(C)(i)-(ii).  Neither Plaintiffs nor Chichester identify any amount

of time that Chichester spent "in a good faith effort to place [S.M.] in an appropriate program" that

should be excluded for purposes of crafting S.M.'s award of compensatory education.  *Lester H.*

*by Octavia P. v. Gilhool*, 916 F.2d 865, 873 n.12 (3d Cir. 1990).  After reviewing the record,

neither can the Court.

The question thus becomes how much and what kind of compensatory education S.M. is

owed.  Plaintiffs seek an award of roughly 43 months at the Melmark School's residential

educational program, which (1) encompasses the roughly 36 months that passed between the

Hearing Officer's August 27, 2021 decision and S.M.'s September 2024 arrival at Melmark, and

(2) includes 7 additional months to ensure S.M. can stay at Melmark until his 22nd birthday.  *See*

Pls.' Br. at 2.  They posit such an award is necessary to "redress the extensive FAPE violation [S.M.] has already suffered" and "protect [S.M.] and his family" from any future efforts by Chichester "to remove him from his placement and send him back to square [one]."  *Id*. at 3, 6. Chichester opposes Plaintiffs' request wholesale on two grounds.  First, they contend it conflicts with the IDEA insofar as "residential educational placements are not intended to be permanent" and "placement decisions must be made on an annual basis by an IEP team."  Def.'s Proposed Final Order 1-2.  Second, neither the "balance of equity" nor the "public interest" weigh in favor of keeping S.M. at Melmark given that S.M.'s mother reported he has "m[ade] gains" since his enrollment in September 2024.  *Id*. at 2.

The Court is mindful that Section 1415(i) "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).  Chichester's IDEA-based objections to Plaintiffs' request are thus well-taken.  *See* Def.'s Proposed Order 1; *see also* 20 U.S.C. § 1412(a)(5) (children with disabilities must be educated in the "least restrictive environment . . . [t]o the maximum extent appropriate"); 34 C.F.R. § 300.114(a)(2)(ii) (specifying that "separate schooling" should occur "only if the nature or severity of [a student's] disability is such that education in regular classes . . . cannot be achieved satisfactorily."); 34 C.F.R. § 300.324(b)(1)(i) (IEP team must "[r]eview the child's IEP periodically, but not less than annually[.]").  Even still, the IDEA "does not foreclose a compensatory award of [prospective] placement in a private school" when necessary. *Draper*, 518 F.3d at 1285 (rejecting proposition that the IDEA's "structural preference for education in public schools" disempowered district court from awarding compensatory prospective placement in a private school).  Moreover, although S.M. may be "making gains" at Melmark, Chichester offers

no evidence that S.M. is already in the position he would have occupied but for Chichester's years-long refusal to offer him a residential educational placement.  Def.'s Proposed Order 2.

On balance, the Court finds that appropriate relief must ensure that S.M. can receive the residential educational programming he was denied for the roughly 36 months between the Hearing Officer's erroneous August 27, 2021 decision and this Court's September 4, 2024 order.[12] The Court will thus order Chichester to fund S.M.'s residential educational placement at the Melmark School through August 2028,[13] unless during that time (1) Plaintiffs ask Chichester for a different placement, program, or school; or (2) Melmark notifies the parties that its residential educational program can no longer meet S.M.'s educational needs.  As outlined below, the Court finds that this relief both "furthers" the purposes of the IDEA and is equitable based on the specific facts of this case.  *Ferren C.*, 612 F.3d at 717.

First, it will ensure that S.M. can receive the "free appropriate public education" the Hearing Officer found he was "entitled to" yet only began receiving in September 2024.  20 U.S.C. § 1400(d)(1)(A); H.O. Dec. 35 (finding that S.M.'s parents were "entitled to what they demand" if Chichester was obliged to provide an IEP "reasonably calculated to provide a FAPE based on [S.M.'s] current needs").  Chichester, by contrast, will merely be "belatedly pay[ing] expenses that

---

[12] The IDEA requires states to provide a FAPE to "all children with disabilities . . .  between the ages of 3 and 21, *inclusive*[.]"  20 U.S.C. § 1412(1)(A) (emphasis added).  Pennsylvania currently guarantees a FAPE to any student "with a disability to the end of the school term in which in which the student reaches his/her 21st birthday." *Pennsylvania Sch. Boards Ass'n, Inc. v. Mumin*, 317 A.3d 1077, 1087 (Pa. Commw. Ct. 2024) (citing Sections 300.101 of the Pennsylvania Department of Education's Model Policy and State Plan).  Here, that means that S.M. must receive a FAPE until the end of the 2027-2028 school term.  Although S.M. will turn 21 in March 2028—presumably before the 2027-2028 school term would ordinarily end—the Court's order extends through August 2028 so that S.M. receives the compensatory education he is owed.  *See* 22 Pa. Code. § 11.1 (defining "school term" as "a minimum of 180 days of instruction for students"); *see also Lester H.*, 916 F.2d at 872-73 (affirming that a court may award compensatory education beyond age 21).  The Court declines, however, to award S.M. compensatory education until his 22nd birthday as Plaintiffs request.

[13] Chichester will still be responsible for funding S.M.'s residential educational placement until August 2028 even if S.M.'s mother moves out of Chichester.  *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497-98 (3d Cir. 2012) ("To comply with the IDEA, a school district no longer responsible for educating a child must still be held responsible for its past transgressions . . . a claim for compensatory education is not rendered moot by an out-of-district move[.]").

it should have paid all along . . ." *Burlington*, 471 U.S. at 370-71. Failing to account for the time that S.M. went without a residential educational placement would mean that his right to a "free" education was contingent on his parents' "ability to 'front' its costs"—a proposition that courts have squarely rejected in endorsing awards of compensatory education. *Miener v. State of Missouri*, 800 F.2d 759, 753 (8th Cir. 1986); *see also Lester H.*, 916 F.2d at 873 (affirming 30-month award and concluding that "Congress, by allowing the courts to fashion an appropriate remedy to cure the deprivation of a child's right to a free appropriate public education, did not intend to offer a remedy only to those parents able to afford an alternative private education"); *Jefferson Cnty. Bd. of Educ. v. Breen*, 853 F.2d 853, 857–58 (11th Cir. 1988) (affirming two-year award because "[w]ithout it, the child's right would depend upon his or her parent's ability to fund the education during the years of administrative proceedings and federal court litigation.").

Second—as the Court has already explained at length—the Melmark School's residential educational program is tailored to S.M.'s "unique needs" and preparing him for "independent living[.]" 20 U.S.C. § 1400(d)(1)(A); *S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. CV 21-4266, 2024 WL 4438472, at *6-7 (E.D. Pa. Oct. 7, 2024) (explaining why "anything less uniform, consistent, and intensive than Melmark's residential educational program is unlikely to confer a 'meaningful educational benefit' on S.M."), *aff'd*, No. 24-2727, 2025 WL 649894 (3d Cir. Feb. 28, 2025). It also happens to be on Pennsylvania's list of "approved private schools," and as such, is "eligible to receive payments for tuition, or tuition and maintenance, from funds of the school district *or the Commonwealth*, *or both*." 22 Pa. C.S. § 171.11 (emphases added); *see also* COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION, *Directory of Approved Private Schools & Chartered Schools for the Deaf and the Blind* 26-27 (May 2025), https://www.pa.gov/content/dam/copapwp-pagov/en/education/documents/instruction/special-

education/aps%20directory.pdf.    Weighing the interests of both parties, the Court finds that ordering Chichester to fund S.M.'s placement at Melmark—the costs of which can be defrayed by the Commonwealth—is equitable.

Finally, even though the record has always preponderantly established that S.M. needed a residential educational placement to receive a FAPE, Chichester has "litigated [S.M.'s] placement" at every possible turn.  *S.M. by & through Michael C. v. Chichester Sch. Dist.*, No. 24-2727, 2025 WL 649894, at *2 (3d Cir. Feb. 28, 2025).  In light of what the Court of Appeals described as the "contentious" procedural history of this case, *see id.* at *3, relief will only be appropriate if it "protect[s]" S.M.'s ability to continue receiving the special education and related services he is long owed at the Melmark School without fear of displacement by Chichester.  20 U.S.C. §§ 1415(i)(2)(C)(iii).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Judgment on the Administrative Record on Count I, enter judgment in favor of Plaintiffs, and—as an exercise of its discretion under 20 U.S.C. § 1415(i)(2)(C)(iii)—order Chichester to fund S.M.'s residential educational placement at the Melmark School through August 2028.

s/ANITA B. BRODY, J.
ANITA B. BRODY, J.
August 19, 2025
